# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE NAME OF THE UNITED STATES for the use and benefit of CONCIERGE BUSINESS SOLUTIONS, INC.<br><br>Use-Plaintiff,<br><br>v.<br><br>US DIVERSIFIED CONTRACTING, SERVICES, INC.; RLI INSURANCE COMPANY; CONTRACTORS BONDING AND INSURANCE COMPANY; DEPARTMENT OF VETERAN AFFAIRS (VA)<br><br>Defendant. | CIVIL NO.<br><br>Re: ACTION TO RECOVER PURSUANT TO THE REQUIREMENTS OF THE MILLER ACT & PROMPT PAYMENT ACT & REQUEST FOR EQUITABLE LIEN<br><br>USE-PLAINTIFF DEMANDS **TRIAL BY JURY**. |

## <u>COMPLAINT</u>

**COMES NOW** Use-Use-Plaintiff, **Concierge Business Solutions, Inc.**, ("CBS" or Use-Plaintiff") by and through the undersigned counsel, and respectfully states, alleges and prays as follows:

## I. <u>JURISDICTION AND VENUE</u>

1.      Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §1331 by virtue of 40 U.S.C.A. §§3131 to 3134 et seq. (the "Miller Act") and 28 U.S.C. § 1345 in that the case involves claims which arise under federal statutes, to wit, the Miller Act. Use-Plaintiff CBS, is a first-tier subcontractor that has furnished labor and materials to a construction project of the United States, specifically the Department of Veteran Affairs (VA) through the National Cemeteries Administration (NCA) Southeast District, and performed and executed within the territorial jurisdiction of this United States District Court.

2.      Furthermore, this Court has diversity jurisdiction over all parties and the subject matter of this litigation pursuant to 28 U.S.C. § 1332 because all the parties on either part of the controversy are of diverse citizenship, ,in that use plaintiff, CBS., is a corporation organized under the laws of the State of Georgia, U.S.A., defendant US Diversified is a corporation organized under the laws of the State of Maine; Surety Company A and Insurance Company B are insurance companies organized and existing under the laws of a state other than the State of Georgia, with its principal place of business in a state other than the State of Maine, and the amount in controversy exceeds the sum of **SEVENTY FIVE THOUSAND DOLLARS** ($75,000.00), exclusive of interest and costs.

3.      Venue is proper in this District pursuant to 40 U.S.C. s. 3133(b)(3)(B) because the transacted business between the parties giving rise to this action occurred in Puerto Rico and the construction site and/or project were the work, materials and labor were furnished is located in San Juan, Puerto Rico and under the provisions of 29 USCA § 1367 because the construction project at issue is being performed in this district. Further, venue is proper in this district because the principal contract described below in Paragraph 14 between the general contractor US Diversified Contracting Services, Inc. (hereinafter "US Diversified") and the United States of America through VA and NCA, was to be performed and executed in the Puerto Rico district, specifically in Bayamon, Puerto Rico.

4.      Use-Plaintiff also asserts supplemental claims arising from the facts to be alleged herein by breach of contract and tortious act.

## II. <u>THE NATURE OF THE ACTION</u>

5.      Use-Plaintiff, CBS,[a certified Service-Disabled Veteran Owned Small Business Concern (SDVOSBC), protected under Public Law 109–461, 109th Congress, Dec. 22, 2006,

and The Veterans Benefit Act of 2003 (15 U.S.C.657)], brings this action against US seeking relief for monies owed, pursuant to a contract subscribed subject to the provisions of the Miller Act, including interest under 31 U.S.C. §3905 (the "Prompt Payment Act"). Use-Plaintiff, entered into the performance of a contract and furnished labor and materials as prescribed therein, and also performed additional and extra labor and furnished additional material, in the prosecution of the work provided in the contract with US Diversified, which benefitted, General Contractor US Diversified and the United States of America, represented by VA and NCA.

6. It is material to the instant complaint to mention that NCA and VA as governmental entities violated the statutory requirement of a Payment and Performance Bond from the general contractor US Diversified, without any, alternative payment protection, leaving Use-Plaintiff CBS without any assurance in spite that the work to be done was on America's infrastructure, Bayamon National Cemetery ("the Project"). Furthermore, CBS relied at all times herein on the belief that VA and/or NCA had requested US Diversified to provide a Payment and Performance Bond for its work, and that the Payment and Performance Bond had been obtained from US Diversified for the Project related to this case. Additionally, there is no cause or justification in law for which to waive the statutory requirement of a Payment and Performance Bond for the government project related to the instance claim.

### III.  **PARTIES**

7. Use-Plaintiff incorporates each and every allegation set forth in Paragraphs 1- 6 as if fully set forth herein in their entirety.

8. In the name of the United States of America, this Complaint is brought for the use and benefit of Concierge Business Solutions, Inc. ("CBS"), a Georgia corporation, organized and existing under the laws of the State of Georgia, with its

principal place of business in 1801 Austell Rd, Marietta GA 30008.  CBS's resident agent is in Georgia and its 100% shareholding owner is Luis A. Montanez, whose address is 1801 Austell Rd, Marietta GA 30008. CBS is a certified Service-Disabled Veteran Owned Small Business Concern (SDVOSBC), protected under Public Law 109 - 461 and The Veterans Benefit Act of 2003 (15 U.S.C.657

9.      Co-Defendant, US Diversified Contracting Services, Inc. ("US Diversified") is corporation organized and existing under the laws of the State of Maine, with is principal place of business in 900 Baie Creuse Rd SAINT DAVID, ME, 04773-4601, USA. US Diversified's resident agent in Main is Kerry Keyes and his address is 900 Baie Creuse Rd SAINT DAVID, ME, 04773-4601.

10.     Co-Defendant Department of Veteran Affairs (VA), is a Department of the United States Government Agency, and owner of the real property located at: 50 Avenida Cementerio Nacional, Bayamón, 00961, Puerto Rico, and was the party that waived the Payment Bond without providing security as required by law to CBS. The physical is 810 Vermont Ave., NW, Washington, DC 20420.

11.     Co-Defendant, the National Cemeteries Administration ("NCA"), is a Department of the United States agency, which by information and belief is the administrator and/or the owner of the real property located at: 50 Avenida Cementerio Nacional, Bayamón, 00961, Puerto Rico, and was the party that waived the Payment Bond without providing security to CBS as required by law. is 810 Vermont Ave., NW, Washington, DC 20420.

12.     RLI Insurance Company (hereinafter "RLI") is a U.S. Treasury Department Listed

4

Surety with offices in Illinois, which by information and belief granted a payment bond for the Project. RLI NAIC Number is 13056 and is licensed to provided surety services in Puerto Rico. By information and belief RLI headquarter office is 111 Pacifica Suite 350, Irvine CA 92618.

13.     Contractors Bonding and Insurance Company (hereinafter "CBIC") is a U.S. Treasury Department Listed Surety with offices in Illinois. RLI NAIC Number is 37206 and is licensed to provided surety services in Puerto Rico. RLI physical address is 9025 N. Linderbergh Drive, Peoria, IL 61615 and postal address is: P.O. Box 3961, Peoria, IL 61612-3961.

14.     Surety Company A is an unknown U.S. Treasury Department Listed Surety which granted a payment bond for the Project. Once his real name is known, Use-Plaintiff would move accordingly with an amended complaint.

15.     Surety Company B, is an unknown U.S. Treasury Department Listed Surety which granted a payment bond for the Project. Once his real name is known, Use-Plaintiff would move accordingly with an amended complaint.

## IV.  GENERAL AND COMMON ALLEGATIONS TO ALL COUNTS AND CAUSE OF ACTIONS

16.     Use-Plaintiff incorporates each and every allegation set forth in Paragraphs 1- 15 as if fully set forth herein in their entirety.

17.     On January 14, 2020, Charles Daniels, VA and NCA Contracting Officer and Specialist requested trough a Master Agreement Task Order Contract (MATOC) a request for proposal for the Project. The general proposal information of the MATOC Task Order RFQ required Payment and Performance Bond for the Project, and is marked with a "Yes" in both bonding requirements. See **Exhibit 1**.

18. On March 19, 2020, co-defendant NCA hired US Diversified as general Contractor in the contracted amount of $151,152.00 under contract number: 36C78620N0380 (hereinafter "NCA Contract"), for concrete work required for the removal of floor pavers and installation of stamped concrete flooring at the Puerto Rico National Commentary (hereinafter "PRNC") located at: 50 Avenida Cementerio Nacional, Bayamón, 00961. See **Exhibit 2**.

19. Section 24 at page 47 of NCA "Performance and Payment Bonds and Alternative Payment Protections for Construction Contracts" states as follows:

24.1 Performance and payment bonds or an irrevocable letter of credit shall be required, based on the limits noted below, with the penal sum established, by the seed project and each Task Order requirement.

24.2 Payment Bond: (a) If an individual Task Order is priced greater than $35,000, but not greater than $150,000, penal sum shall be one-hundred percent (100%) of order price. If greater than $150,000, payment bonds are required with performance bonds.

24.3 Intentionally Omitted

24.4 Irrevocable letter of credit: Shall be equal hundred percent (100%) of the price of each Task Order.

24.5 Bonds and other payment protections shall be provided withing 10 calendar days of award of a Task Order. Notice to Proceed will not be issued until the Contractor provides sufficient bonding to cover the work being performed.

24.6 Bond costs are to be calculated into the overall price of the quote/proposal.

24.7  Intentionally omitted.

20.  US Diversified Payment Scheduled and/or Itemized and registered for Project includes in one of its division a Payment & Performance Bond item for the amount of $4,403.00, that after adding the other amounts of the Project Items sum a total of $151,152.00. See Exhibit 3.

21.  On July 22 2019, RLI and CBIC delivered a letter that provides in part that CBIC provides surety credit to US Diversified and is willing to entertain a $2,000,000, single job size with the aggregate bonding limit of $4,000,000.00, should US Diversified accept the award for the Project.  See **Exhibit 4**.

22.  At all times herein, Use-Plaintiff CBS was under the belief that a Payment Bond by the general contractor was in place as required by the Miller Act and under the NCA Contract as a condition for awarding the contract to the general contractor pursuant 40 U.S.C. §3131(b).

23.  The work to be performed by US Diversified under the NCA Contract (Exhibit 2) including but not limited to the removal of pavers, sand and installation of stamp concrete, shall be performed in compliance but not limited to the Veteran Affairs Agency Contract and the Federal Acquisition Policy, and FAR 52.232-5, FAR 52.232-16, FAR 52.232-27, FAR 52.232-33 and FAR 52.232-40 among others federal regulations.

24.  The Section 35.6 of the NCA Contract with US Diversified states that "All request for payment must include a Sub-Contractor Payment Register pursuant to FAR 52.232-5 and a Contractor's Certification that reads as follows: I hereby certify, to the best of my knowledge and belief that- 35.6.1) The amount requested are only for performance in accordance with the specifications, terms and conditions of the

contract; 35.6.2) Payments to Sub-Contractors and suppliers have been made for previous payments under this task order, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreement and requirement of Chapter 39 of Title 31, United States Code; 35.6.3) This request for progress payment does not include any amount, which the general Contractor intends to withhold or retain from Sub-Contractor or supplier in accordance with the terms and conditions of the subcontract; and, 35.6.4;**…**" See Further US Diversified Application and Certification for Payment. **Exhibit 13**.

25. On April 10, 2020, US Diversified, the General Contractor, contracted with CBS, acting as a subcontractor, through a first-tier subcontract (hereinafter the "Subcontract') (**Exhibit 5**), to provide a "turn-key service" that included providing documentation, specifications, construction management, quality control, construction materials and labor for the completion of the required scope of work included in the NCA Contract, for an amount of EIGHTY SEVEN THOUSAND FIVE HUNDRED SEVENTY THREE DOLLARS WITH SEVENTY FIVE CENTS ($87,573.75).

26. On November 6, 2020, US Diversified and NCA provided CBS a Notice to Proceed for the first half of the roundabout. See **Exhibit 6**.

27. Later on November 9, 2020, CBS commenced its works in the Project.

28. On November 10, 2020, US Diversified and NCA request a change order for scarifying the underlying concrete base bed under the existing pavers and sand after removal. The price agreed by US Diversified and CBS for the change order was $16,060. See **Exhibit 7.**

29. On November 11, 2020, CBS informed NCA, VA and US Diversified that a change in site conditions would be deemed necessary because of differences in measurements

when comparing the area of the work of the project taken originally by pictures and the real ones onsite.

30.  On December 29, 2020, the NCA Contract was increased in an amount of a total of One Hundred Sixty-Four Thousand One Hundred Eighty-Seven Dollars ($164,187.00). See **Exhibit 8**.

31.  CBS archived substantial completion of its work in December 29, 2020, and the NCA started using the concrete pavement for the purpose it was intended the day after.

32.  CBS has been required to perform extra work and directly impacted from Government delays as result of NCA's action during the construction process.

33.  CBS pleads for a waiver of sovereign immunity sufficient to satisfy the requirements of a Miller Act violation, since the Project was built with federal funds we plead for an equitable remedy.

34.  CBS seeks what is entitled by law and under the contract and pleads for a waiver of sovereign IAW 5 U.S.C. § 702. See: Quality Mechanical Contractors v. Moreland Corp., 19 F. Supp. 2d 1169 (1998) and Blue Fox, Inc. v. Small Business Admin., 121 F.3d 1357, 1359 (9th Cir.1997).

35.  CBS seeks an equitable lien on funds currently held by the NCA as part of its NCA Contract.

36.  CBS seeks recovery for unjust enrichment as a result of the NCA enjoying the fruits of CBS's labor and the materials provided and unable to return.

37.  Contractor breached its contract with plaintiff in that it failed and refused to make progress payments for labor, material and equipment, as set forth above, and CBS thereupon

9

was deprived of his monies and a reasonable compensation thereof. However, CBS despite that it is being constructively forced to terminate due to cash flow constraints, has continued its performance to address any Contractor and NCA concerns.

38.     US Diversified failed to make progress payments to CBS nor have they paid for all the extra damages incurred by CBS in order to fulfill the Subcontract.

39.     At the time of filing of the instant complaint, CBS has not been paid in full for furnished labor and materials invoiced on November 27, 2020, all of which  have been furnished in the prosecution of the work provided in the NCA Contract and specifications and under the Subcontract.

40.     Pre-final inspection was requested on December 29, 2020, but was denied because the assigned project engineer was on leave.

41.     On January 7, 2021, CBS received a summary of findings for the 36C78619D0173 36C78620N0380 871-NRM20-0003 Concrete Pavers project inspection, which CBS responded immediately in prompt manner to all concerns, and never refused to address and cure the punch list items.

42.     On February 4th, 2021, US Diversified failed to make a progress payment to CBS of $46,753.94 after receiving 70% progress payment from NCA. Demand for payment notice was sent to US Diversified.

43.     Later CBS sent a letter to the NCA notifying the NCA that it had not been paid and would-be requesting payment from the NCA.

44.     Later, CBS provided a notice to NCA to inform that CBS had not been paid and requested copy of the General Contractor's payment bond on February 4th, 2021,

without any success.

45.    CBS incurred an expense of Four Thousand Five Hundred Dollars ($4,500.00) in order to secure a Fifty Thousand Dollars ($50,000.00) business loan in order to have cashflow for the completion of the works under the Subcontract upon receiving notification by US Diversified that no progress payments would be made.

46.    Thus, CBS contracted labor and assumed unexpected financial obligations to meet the terms of the contract with US Diversified.

47.    At all time, herein, Use-Plaintiff acted as a subcontractor to Contractor, and performed works and furnished materials to the Project as required under its Subcontract and as requested by Contractor, all with the knowledge and consent of the Contractor, VA and NCA in the furtherance of its contract with the United States and for the benefit of the Contractor, the Owner and the Project.

48.    At all-time herein, Use-Plaintiff performed its works in a timely, workmanlike manner in conformity with the Subcontract requirements.

49.    Use-Plaintiff last furnished labor, materials and equipment under its subcontract on or about March 15, 2021.

50.    As of September 8, 2021, US Diversified owed Use-Plaintiff a total amount of $105,852 plus interest allowed in accordance with 31 U.S.C. §3905 (the "Prompt Payment Act") for work performed under the contract as US Diversified has failed to make proper and timely payments to Use-Plaintiff for labor and material furnished in the Project.

51.    By information and/or belief, Contractor has already been paid by Owner for its

work and services in the Project, but neither US Diversified nor VA nor NCA has paid CBS.

52.    Use-Plaintiff has sent notices and written demands to US Diversified and VA and NCA without avail.

53.    In spite of the aforementioned demands, neither Contractor nor VA nor NCA have paid to Use-Plaintiff the amounts due.

54.    This suit has been commenced within one (1) year from the date upon which the last day of labor was performed or materials were supplied by Use-Plaintiff in the Project.

55.    All conditions precedent to bringing this action against US Diversified have been satisfied, waived or excused.

56.    US Diversified requested and directed the performance of CBS's work and the labor, material, and or service occasioned by their its acts, order and directives and accepted and enjoyed the benefits of the labor, materials and services furnished by CBS in response to those requests and directives.

57.    US Diversified, RLI, CBIC, NCA and VA, and sureties A and surety B, were aware or should have been aware at all times material hereto, that CBS expected, would demand and had demanded, to be paid in full for the labor, material and services occasioned by US Diversified's requests, acts, orders, and directives.

58.    As a result of US Diversified's acts previously described, orders, and directives, CBS has furnished to US Diversified and United States of America, labor material, and services which US Diversified knowingly and voluntarily requested and accepted, and for which US Diversified expressly or impliedly promised to pay, having an actual and reasonable value in excess of $105,852.00 for which CBS has not been paid and which have, at US Diversified

direction, inured to US Diversified and United States of America's benefit.

59.    During the execution of the works in the Project, the total contract amount of CBS with US Diversified increased to approximately $164,187.00.

60.    At the present time, CBS has only received $26,000.00 from US Diversified, which is approximately twenty five percent (25%) of its contract

61.    Through its acts, orders and directives, US Diversified requested and directed to perform works for the benefit of VA, NCA and the General Contractor.

62.    Notwithstanding plaintiff's demands on US Diversified, VA and NCA, RLI, CBIC, and Surety A and Surety B, payment the amounts owed to CBS as part of the work performed under the Project and other monies owed in the benefit of the United States of America, CBS have not been paid and there is now justly due and owing to CBS the sum of ONE HUNDRED AND FIVE THOUSAND EIGHT HUNDRED FIFTY-TWO DOLLARS ($105,852).

## V.   CAUSES OF ACTION
### COUNT I:

### MILLER ACT CLAIMS FOR PAYMENT TO FIRST TIER SUBCONTRACTOR

63.    Use-Plaintiff fully incorporates herein each and every allegation set forth in precedent paragraphs 1-62 as if fully set forth herein in their entirety.

64.    By information and belief VA through NCA waived a payment bond which was solely to comply with the Miller Act, and is designated for the protection of claimants performing labor or furnishing materials to the general contractor or its subcontractors for wok contracted for on the Project.

65.    CBS has direct contractual relationship with US Diversified.

66.   CBS is a bona fide claimant of the payment bond.

67.   CBS has taken all necessary steps to obtain protection under the Miller Act Bond.

68.   More than ninety (90) days have elapsed from the date on which the last day of work was performed and/or supplies were provided by Use-Plaintiff on the Project.

69.   Less than one (1) year has elapsed since the last of the materials was supplied and/or labor was performed on the Project.

70.   Pursuant to the provisions of the Miller Act, Use-Plaintiff is entitled to recover a reasonable amount for attorney's fees and cost for the preparation of the claims and to pursuit this civil action.

71.   That the prime contractor contracted with Use-Plaintiff subcontractor CBS to perform a specific part of the labor or material requirements of the General Contractor's contract with the federal government.

72.   That in violation of the law, VA and NCA have waived the requirement of the Miller Act, in a contract that exceeds $100,000, and did not provide a payment bond or a replacement security for the protection of all persons supplying labor and material in the prosecution of the work provided for in NCA Contract for the performance of the Project.

73.   At all times herein CBS believes in good faith that the labor and materials were intended for the specified works in the Project.

74.   Further, CBS in good faith believed that the labor and material furnished were intended for the federal project.

75.   Despite the above, as CBS contracted directly with the general contractor, no special notice requirement is required in order to maintain an action against the Miller Act payment

bond

76.   In the performance of its subcontract, Use-Plaintiff performed works required by US Diversified, delivered and furnished material and labor as requested by the US Diversified and performed additional works all with the knowledge, and consent of US Diversified in furtherance of its contract with the NCA, as follows:

### A.   CLAIM 1: UNPAID INVOICES FOR WORK UNDER CONTRACT

77.   Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs 1-76, as if fully set forth herein in their entirety.

78.   **Claim No. 1** relates to CBS's unpaid works under his contract with US Diversified as requested in the demands for payment as described as follows:

79.   Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs as if fully set forth herein in their entirety.

80.   On November 6, 2020, US Diversified and NCA provided CBS a Notice to Proceed for the first half of the roundabout. Later on, November 9, 2020, CBS commenced its works in the Project.

81.   On November 10, 2020, US Diversified and NCA request a change order for scarifying the underlying concrete base bed under the existing pavers and sand after removal. The price agreed by US Diversified and CBS for the change order was $16,060. **See Exhibit 7, which is set forth herein as fully incorporated in their entirety.**

82.   On November 11, 2020, CBS completed the first phase of the Project. Later on November 24, 2020, the first phase of the Project was accepted. On November 27, 2020, CBS submitted the first invoice. **See Exhibit 9.**

83.     On November 28, 2020, US Diversified agreed to provide Twelve Thousand Dollars ($12,000) progress payment for first invoice and Fourteen Thousand Dollars ($14,000) of second invoice once concrete and materials were delivered. On that same date, November 28, 2020, CBS received a partial payment of her first invoice.

84.     On December 2, 2020, CBS started the second half of the round-about and the visitor parking entrance. Later, on December 3, 2020, CBS submitted the second invoice. See Exhibit 10.

85.     On December 04, 2020, US Diversified requested the project acceleration and alluded that faster payments will be made if CBS started the third phase demolition prior to completion of the second phase.

86.     On December 7, 2020, CBS started the third phase of the project related to the horseshoe area around the administration building.  On December 8, 2020, CBS received a partial payment of the second invoice from US Diversified. Later, on December 11, 2020, CBS completed the second phase of the Project.

87.     On December 16, 2020, Kerry Keyes sent a text message to Luis Montanez, CBS's president stating: "And if that is the case, we're probably going to need to get your bonding company to bond the project and you should also have the concrete company put up some sort of a bond on it."

88.     Furthermore, on December 30, 2020, Kerry sent a text message to CBS's president stating: "Alternative if you want me to pay you now, no problem. I need a performance and payment bond wishing guarantees the workmanship and warranty on the project".

89.     On December 12, 2020, CBS submitted the third invoice. See Exhibit 11.

90.    On December 28, 2020, an inspection of CBS's works took place and on December 29, 2020, CBS achieved substantial completion, pending final inspection.

91.    On December 29, 2020, NCA informed US Diversified and CBS that final inspection could not be done and revised joint plan had not been approved while CBS was at the jobsite because that VA's Engineer was on vacation until January 4, 2021.

92.    Surprisingly, on December 30, 2020, US Diversified refused to make the payment to CBS until paid and request surety bonding from CBS as condition of payment.

93.    On January 1, 2021, CBS was informed by US Diversified of seven (7) outstanding deficiencies, from the inspection that took place earlier. On that same date, January 1st, 2021, CBS responded to the seven ((7) NCA's concerns on behalf of US Diversified.

94.    On January 27, 2021, Kerry Keyes sent an email to Mr. Luis Montanez stating: "This don't work for me. You want us to take over the job for nothing. Get a performance and payment bond and we will pay you for your performance to date to forty percent (40%) that allows you to continue. Stop acting like a PFC with all the congressman and bullshit legal jargon and do your job Major."

95.    On January 14, 2021, CBS requested once again payment for invoice 1, 2 and part of 3 based on the percentage (%) of money received in order to schedule rework of the seven (7) concerns.

96.    On January 21, 2021, in accordance with (IAW) FAR 32.112-1 (Subcontractor assertions of nonpayment) CBS informed to Contracting Officer (Mr. Charles Daniels) of US Diversified's non-payment.

97.    Despite the above, as of January 26, 2021, US Diversified has received payment of

seventy percent (80%) of the Project.

98.     On January 28, 2021, Kerry Keyes sent an email to Mr. Luis Montanez stating: "This is a Zero risk in you being paid. We are a strong company with good solvency. But we are not willing to take giant risks especially without a bond. You must understand our position.

99.     On February 1st, 2021, CBS returned to the Project to address 7 concerns of punch list. On February 2, 2021, NCA issued a stop work order because US Diversified had not submitted the work schedule and or send an on-site supervisor.

100.    On February 8, 2021, US Diversified submitted the work schedule and revised joint plan for Government approval. On February 10, 2021, NCA approved the work schedule and revised joint plan and approved of CBS addressing the 7 concerns.

101.    On March 15, 2021, after the contracting officer representative inspection, CBS completed the seven (7) concerns of punch list.

102.    On April 2, 2021, Kelly Bruno, Chief Contracting Construction Department of NCA of VA sent an email to Luis Montanez and other contacts, acknowledging that six (6) of the seven (7) tasks that the government had deemed non-compliance were completed. See Exhibit and that "the government anticipates having the last issue resolved by NLT April 15, 2021."

103.    Finally, we ask that this unjustified reduced and untimely payments (as defined in FAR 19.701 and required per FAR 42), to a small business subcontractor is documented in US Diversifier's past performance history so in the future payment bond is mandatory on ALL there projects so other subcontractors don't suffer as we have. We submitted a debarment suspension referral form for US Diversified to the VA department of Risk Management and Compliance Service/003A2C for consideration.

104.     On November 20, 2020, CBS completed successfully the first phase of the Project, and on November 24, 2020, submitted its invoice to US Diversified.

105.     On November 28, 2020, CBS requested to US Diversified the payment due for the first invoice. However, US Diversified only agreed to provide the amount of Twelve Thousand Dollars ($12,000) for the progress payment of first invoice, and Fourteen Thousand Dollars ($14,000) for the second invoice once concrete and materials were delivered to the Project.

106.     On November 28, 2020, CBS received partial payment for the first invoice. On December 2, 2020, the 2nd phase started (2nd half of roundabout and visitor parking entrance). The next day, December 3, 2020, the second invoice was submitted by CBS.

107.     On December 4, 2020, US Diversified requested project acceleration and promised that faster payments will be made if CBS started phase 3 demolition prior to completion and acceptance of phase 2. On December 7, 2020, the 3rd phase started (horseshoe area around the administration building).

108.     On December 7, 2020, US, Mr. Kelley Keyes, Diversified Owner, reminded to submit a revised joint plan to VA. Thereafter, on December 8, 2020, a partial payment for 2nd invoice was received by CBS.

109.     The payment for the second application for payment was requested by US Diversified for a payment of $22,095, but CBS only received a payment of $14,000.00.

110.     Shortly thereafter, CBS completed the Second Phase of the Project on December 11, 2020 and on December 19, 2020, CBS submitted a third invoice of $57,713.85 (Exhibit 11).

111.     Later, on December 29, 2020, CBS completed the Third Phase, including Substantial Completion milestone, that was achieved pending final inspection.

112. On December 30, 2020, US Diversified refused to pay to CBS until paid and requested from CBS a payment surety bond as condition for payment.

113. On January 14, 2021, CBS requested payment for invoice 1, 2 and part of 3 based on the percentage (%) of money received by US Diversified in order to schedule rework of the seven (7) concerns.

114. On January 21, 2021, in accordance with (IAW) FAR 32.112-1 (Subcontractor assertions of nonpayment) CBS informed by writing to Mr. Charles Daniels, the contracting officer, of US Diversified's non-payment.

115. In spite of the above stated in the precedent paragraph, on January 26, 2021, US Diversified received payment of 70% of the project.

116. VA and NCA paid to US Diversified 70% of the contract on or around January 28th, 2021 even with privity and knowledge that US Diversified has not paid CBS in accordance with Chapter 39 of Title 31, United States Code (Prompt Payment Act). Title 31 U.S.C. § 3905.

117. VA and/or NCA waived to request and/or supervise and/or intentionally omitted to confirm with US Diversified that US Diversified has paid its subcontractors before making the payment for the 70% of the works as required per Title 31 U.S.C. § 3903(b)(1)(B)(ii).

118. At the time NCA, VA and paid US Diversified the 70% of the works in the Project, US Diversified has only paid to CBS 25% of his works.

119. In spite of the payments requested through the invoices and letter of demand and claim notices sent to US Diversified, CBS has only received $26,000.

120. The works performed and material requested and described under CBS's invoices number 1 through number 3, were furnished and/or delivered and/or bought and/or installed

and/or stored to and in benefit to the Federal Government and to US Diversified and to the Project. Use-Plaintiff has satisfied in full all claims for labor, material, supplies, and/or other things of value purchased, furnished, fabricated, or supplied by Use-Plaintiff for use in connection with Project except those claims noted that were caused by third parties, or were affected by CBS not receiving the payments of the amounts requested in the application for payment stated above and any other related, which are unpaid at this time.

121.    Pursuant to the provisions of the Miller Act, Use-Plaintiff is entitled to recover its reasonable attorney's fees and costs for pursuit of this action.

122.    Although Use-Plaintiff has made demands for payment, defendants US Diversified, VA and NCA, RLI, CBIC, and surety A and surety B, still owed to CBS the principal amount of: First Invoice: for the amount of Ten Thousand One Hundred and Sixty Two Thousand with Eighty Five Cents ($10,162.85); Second Invoice: Ten Thousand and Ninety Five Dollars with Fifteen Cents ($10,095.15); Third Invoice: Fifty Seven Thousand Seven Hundred and Thirteen with Thirty Eight Cents ($57,713.85); together with accrued and accruing interest, reasonable attorney's fees and cost incurred.

123.    The invoices, delivery tickets, and other documents along with a statement, all of which show the amount due to Use-Plaintiff were sent and delivered to US Diversified, therefor.

## COUNT # 2
## ADDITIONAL WORK

124.    Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs 1-123, as if fully set forth herein in their entirety.

125.    **Claim No. 2** relates to the additional one inch of concrete poured in the job site, not expressed in the original scope of work but contemplated in the Subcontract, for an amount

of Two Thousand Dollars ($2,000.00).

126.   On December 11, 2020, CBS notified US Diversity that a variance on the concrete pouring would occur in the site, as to a change in the site conditions, as to more than four inches (4") of concrete. See Exhibit 14 which is fully incorporate herein.

127.    Upon notice US Diversified authorized the change and that the amount and information of the change be kept and logged.

128.    The concrete pouring occurred on December 14 through 18, 2020.

129.    The works performed in the precedent paragraph above number 82 through 85, were furnished and/or delivered and/or bought and/or installed and/or stored to and in benefit to the Federal Government and to US Diversified and to the Project. The invoices, delivery tickets, and other documents along with a statement, all of which show the amount due to Use-Plaintiff were sent and delivered to US Diversified, therefor. Use-Plaintiff has satisfied in full all claims for labor, material, supplies, and/or other things of value purchased, furnished, fabricated, or supplied by Use-Plaintiff for use in connection with Project except those claims noted that were caused by third parties, or were affected by CBS not receiving the payments of the amounts requested in the application for payment No. 11 and any other related, which are unpaid at this time.

130.    Pursuant to the provisions of the Miller Act, Use-Plaintiff is entitled to recover its reasonable attorney's fees and costs for pursuit of this action.

131.    Although Use-Plaintiff has made demands for payment, defendants US Diversified, VA and NCA, RLI, CBIC, and surety A and surety B, still owed to CBS the principal amount of Two Thousand Dollars ($2,000.00), together with accrued and accruing interest, reasonable attorney's fees and cost incurred.

## **CLAIM NO. 3**

132.     Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs 1-131, as if fully set forth herein in their entirety.

133.     **Claim No. 3** relates for the payment of Three Hundred and Seventy-Nine Dollars ($379.00) related to direct cost of rental of portable toilet which was not included in the original scope of work.

134.     The cost incurred herein started on November 9, 2020, and was required for the performance of the Project due to the instruction of the NCA.

135.     The aforementioned cost of portable toilet, were furnished and/or delivered and/or bought and/or installed and/or stored to and in benefit to the Federal Government and to US Diversified and to the Project. The invoices, delivery tickets, and other documents along with a statement, all of which show the amount due to Use-Plaintiff were sent and delivered to US Diversified, therefor. Use-Plaintiff has satisfied in full all claims for labor, material, supplies, and/or other things of value purchased, furnished, fabricated, or supplied by Claimant for use in connection with Project except those claims noted that were affected by third parties and by ED not receiving the payments of the amounts requested in the application for payment No. 12 and any other related, which are unpaid at this time.

136.     Pursuant to the provisions of the Miller Act, Use-Plaintiff is entitled to recover its reasonable attorney's fees and costs for pursuit of this action.

137.     Although Use-Plaintiff has made demands for payment, defendants US Diversified, VA and NCA, RLI, CBIC, and surety A and surety B, owed the principal amount of Three Hundred and Seventy-Nine Dollars ($379.00), together with accrued and accruing interest, reasonable attorney's fees and cost incurred.

## **CLAIM NO. 4**

138.    Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs 1-137, as if fully set forth herein in their entirety.

139.    **Claim No. 4** relates to the additional monies fees incurred by CBS due to the unpayment of US Diversified to CBS's invoices.

140.    Furthermore, CBS despite being constructively forced to terminate the work under the Contract due to cash flow constraints, CBS continued its performance until completion and substantial completion and borrowed monies in order to perform under his subcontract.

141.    As a result of US Diversified un compliance with the law and payment requirements and despite getting benefits from CBS's works during her performance in the subcontract, CBS was forced to borrow monies through a loan with borrower Loan Builder on February 3, 2021, for the amount of Fifty Thousand Dollars ($50,000) with a fixed loan fee of Four Thousand Five Hundred Dollars ($4,500.00). (See Exhibit 15).

142.    The monies obtained through the loan were used for the benefit of VA, NCA and US Diversified.

143.    CBS utilized the monies received from the loan borrowed to complete the works in the Project for the benefit of NCA, VA and US Diversified.

144.    The invoices, delivery tickets, and other documents along with a statement, all of which show the amount due to Use-Plaintiff were sent and delivered to US Diversified, therefor.

145.    The amount of the change order agreed was for a total of $4,500.

146.    Pursuant to the provisions of the Miller Act, Use-Plaintiff is entitled to recover its reasonable attorney's fees and costs for pursuit of this action.

147.    Although Use-Plaintiff has made demands for payment, defendants US Diversified,

VA and NCA, RLI, CBIC, and surety A and surety B, owed CBS the amount of FOUR THOUSAND AND FIVE HUNDRED DOLLARS ($4,500.00), together with accrued and accruing interest, reasonable attorney's fees and cost incurred.

## CLAIM NO. 5

148.     Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs 1-147, as if fully set forth herein in their entirety.

149.     **Claim No. 5** relates to the additional monies fees that are incurred due to the money collection services.

150.     As a result of US Diversified un compliance with the law and payment requirements and despite getting benefits from CBS's works during her performance in the subcontract, CBS was forced to agree with a money collection agency, in order to collect monies from US Diversified.

151.     The amount of money related to the instant claim is Thirteen Thousand One Hundred and Seventy Dollars ($13,170.00).

152.     Additionally, CBS incurred and will continue to incur in attorney's fees at the present related to the instant action in a sum in excess of Seven Thousand Dollars ($7,000.00).

153.     The legal fees incurred and that will be incurred are related to the instant complaint.

154.     Pursuant to the provisions of the Miller Act, Use-Plaintiff is entitled to recover its reasonable attorney's fees and costs for pursuit of this action.

## CLAIM NO. 6

155.     Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs as if fully set forth herein in their entirety.

156.     Claim 6 relates to a claim under the Prompt Payment Act.

157.     On April 2, 2021, VA sent an email to CBS stating: "We are aware that US Diversified received payment for 80% of the contract on or around January 28th which makes US Diversified in direct non-compliance with the Prompt Payment Act. In addition, US Diversified may have submitted a false certification when submitting the payment request since a certification that subcontractors have been paid is required per Title 31 U.S.C. § 3903(b)(1)(B)(ii). In other words, the prime contractor shall not bill the government for amounts it intends to withhold from its subcontractors." See **Exhibit 12.**

158.     Contractor in violation of Prompt Payment Act incurred in late payments to CBS, as follows as of September 8, 2021:

  a)  Invoice Number 1, for the amount of Ten Thousand One Hundred Seventy-Three ($10,173) with 287 days of delay; the interest incurred by the late payment is $80.

  b)  Invoice Number 2, for the amount of Ten Thousand Ninety-Five Dollars ($10,095) with 281 days of delay; the interest incurred by the late payment is $78.

  c)  Invoice Number 3, for the amount of Fifty-Seven Thousand and Seven Hundred and Fourteen Dollars ($57,714) with 265 days of delay; the interest incurred by late payment is $421.

  d)  Late Payment for the amount of Two Thousand Dollars ($2,000) with 265 days of delay; the interest incurred by the late payment is $15.

  e)  Late Payment for the amount of Four Thousand Five Hundred Dollars ($4,500) with 213 days of delay; the interest incurred by the late payment is $26.

f) Late Payment, for the amount of Thirteen Thousand and One Hundred Seventy-Five Dollars ($13,175) with 157 days of delay; the interest incurred by the late payment is $57.

g) Late Payment No. 7, for the amount of $500 with 35 days of delay; the interest incurred by the late payment is $0.

h) Late Payment for Payment additional legal fees, for the amount of $7,000 with 122 days of delay; the interest incurred by the late payment is $23.

159. Contractor has failed to pay Use-Plaintiff the amounts due for Use-Plaintiff's work performed and/or materials supplied for the Project.

160. Use-Plaintiff has submitted invoices to Contractor for labor and materials furnished, but the Contractor has failed to fully pay all amounts rightfully due in timely manner in violation of the Prompt Payment Act.

161. US Diversified received the monies related of the payment applications submitted by CBS.

162. Due to the Contractor fault Use-Plaintiff is entitled to interest, penalties, and other damages as provided by the provisions of the Prompt Payment Act.

163. Notwithstanding Use-Plaintiff's demands on US Diversified, and VA for payment such balance has not been paid and there is now justly due and owing to CBS the sum of $105,852, that amount being the reasonable value of the material and labor and extra works furnished by CBS in the project for the benefit of the United States of America.

164. Contractor breached its contract with Use-Plaintiff in that it failed and refused to pay Use-Plaintiff the moneys due it for labor, material and equipment, as set forth above, and

CBS thereupon was deprived of his monies and a reasonable compensation thereof. However, CBS despite was being constructively forced to terminate its work in the project continued its performance until US Diversified and VA willfully and wrongfully removed CBS from the Project.

165.    Defendants US Diversified, VA and NCA, RLI, CBIC, and surety A and surety B, ow the monies pertaining the interest accrued by CBS in his Prompt Payment Claim.

166.    All conditions precedent for the bringing and maintenance of this action have been performed or have occurred.

## COUNT 2
## EQUITABLE LIEN REQUEST

167.    Use-Plaintiff fully incorporates herein each and every allegation set forth in the precedent paragraphs 1-166, as if fully set forth herein in their entirety.

168.    The NCA was actively involved with the day-to-day process of construction through the assigned Contracting Officer Representative (COR).

169.    The NCA appointed two engineers whose duties included acquiring contract specifications, holding construction meetings inspecting and approving work.

170.    The NCA's contract procurement procedures and contract regulations were heavily involved in the project's design, plans and material approval.

171.    The request for proposal for the Project requests a Payment and Performance Bond.

172.    The public contract documents for the Project clearly specify that a Payment Bond was required for the Project to US Diversified.

173.   NCA and VA awarded the Contract to US Diversified. All the contract clauses included in the contract between US Diversified and the NCS include bonding and certified payment requirements.

174.   US Diversified/s bid was "Accepted" by NCA which included a line item for payment and performance bond.

175.   RLI provided a bonding capacity letter provided in the contract documents.

176.   CBS archived substantial completion of its work in December 29, 2020, and the NCA started using and beneficiating from the works performed by CBS including, the concrete pavement for the purpose it was intended the day after.

177.   CBS notified by writing to the NCA that it had not been paid and would-be requesting payment from the NCA.

178.   By information and belief, VA, NCA and the Contracting Officer, paid monies to US Diversified in spite of waiving a payment bond and/or replacement of assurance of payment to subcontractors for the Project, and that US Diversified has not paid CBS.

179.   Furthermore, VA, NCA and the Contracting Officer did not take any action to protect CBS's rights and interest as a subcontractor as required by law in the Project, waiving any protection under law for not been in privity with CBS, thus they are fully responsible for the amounts owed to CBS by US Diversified.

180.   Furthermore, VA, NCA and Contracting Officer did not initiate any action or investigation, nor to verify the amounts due by US Diversified to CBS and whether or not US Diversified has paid to CBS as required by law and/or under the NCA contract.

181.   Defendants and VA, NCA acted contrary to law, equity and good faith and waived

any protection they may have under law, and are liable for CBS's payments and claims under equity, law and under Miller Act, in the Project.

182.   US Diversified has not made progress payments to CBS nor have they paid for all the extra damages incurred by CBS in order to fulfill the Subcontract.

183.   Further, CBS was directed to perform extra work and was directly impacted from Government delays as result of NCA's managerial activities as owner during the construction process of the Project.

184.   In light of the above, CBS pleads for a waiver of sovereign immunity sufficient to satisfy the requirements of a Miller Act violation, since the Project was built with federal funds and the NCA Contract required such a Bond, and CBS relied on the bond assurance while performing his work under the Contract for the Federal Government, CBS plead for an equitable remedy.

185.   As a result, CBS has the right to request waiver of sovereign immunity under 5 U.S.C. § 702 (Administrative Procedures Act) as a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action. See: Blue Fox, Inc. v. Small Business Admin., 121 F.3d 1357, 1359 (9th Cir.1997), cert. granted, omitted citation, 118 S. Ct. 2365, 141 L. Ed. 2d 734 (1998) and Quality Mechanical Contractors, Inc. v. Moreland Corp., 19 F.Supp.2d 1169 (D.Nev.1998).

186.   CBS seeks an equitable lien on funds currently held by the NCA as part of its NCA Contract.

187.   Further, CBS seeks recovery for unjust enrichment as a result of the NCA enjoying the benefits of CBS's labor and the materials provided in the Project with the aggravating that CBS is unable to return to the Project as ordered by NCA and VA.

188. CBS breached its contract with plaintiff in that it failed and refused to make progress payments for labor, material and equipment, as set forth above, and CBS thereupon was deprived of his monies and a reasonable compensation thereof.

189. At all-time herein, CBS despite being constructively forced to terminate the work under the Contract due to cash flow constraints, CBS continued its performance until completion and substantial completion and has always been willing and able to address any Contractor and NCA concerns or issues.

**JURY TRIAL DEMANDED**

190. Use-Plaintiff incorporate each and every allegation set forth in Paragraphs 1- 189 as if fully set forth herein in their entirety.

191. Use-Plaintiff, pursuant to F.R. P. 38(b) and any other law, and equity herewith demands a trial by jury.

192. **WHEREFORE**, the **UNITED STATES OF AMERICA on** behalf of and to the use of CBS, request judgment against defendants, in the amount of ONE HUNDRED FIVE THOUSAND AND EIGHT HUNDRED FIFHTY TWO DOLLARS ($ 105,852), plus interest as permitted by law; grant the EQUITABLE LIEN REQUEST, plus cost of suit incurred therein; reasonable attorneys' fees as permitted by the applicable law; prejudgment interest at the statutory rate; and, for such other relief and further relief as the court deems just and proper

**RESPECTFULLY SUBMITTED**, this 14th day of September, 2021.

*/s/ Francisco L. Charles-Gómez*

**Francisco L. Charles-Gómez**
USDC-PR-303211
Charles-Gómez Law Office, LLC
P.O. Box 1360 Trujillo Alto, P.R. 00977

Tel. (787)-662-0178
Fax. (787)-724-6780
fcharleslaw@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this same date a copy of this Complaint together and simultaneously with its supporting exhibits was electronically filed with the Clerk of the Court using the CM/ECF system, and Defendant will be served by process server with a copy of the Summons and the Complaint, in accordance with the Federal Rules of Civil Procedure, as soon as the summons is issued by this Court.

*s/ Francisco L. Charles-Gómez*

Francisco L. Charles-Gómez
USDC-PR-303211